**Joe JACKSON and Ruby Jackson, Plaintiffs,**

**v.**

**Thomas JOHNSON, Corrections Officer and Glen S. Goord, Commissioner of Correctional Services, Defendants.**

**No. 97CIV.1592(LAK)(AJP).**

United States District Court, S.D. New York.

Dec. 11, 1997.

Joe Jackson, Attica, NY, pro se.

Ruby Jackson, New York, NY, pro se.

Richard Cardinale, Asst. Atty. Gen., State of New York, New York, NY, for Defendants.

## ORDER

KAPLAN, District Judge.

The reports and recommendations of Magistrate Judge Peck, dated November 18 and December 2, 1997, are adopted without objection.[1] Defendants' motion to stay the action is denied. Plaintiffs' motion to add the New York Department of Correctional Services and the State of New York as defendants likewise is denied.

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge:

Presently before the Court is defendants' motion to stay plaintiffs' § 1983 action— which alleges that plaintiff Joe Jackson was subjected to retaliation and prison disciplinary punishment in violation of due process

when a "weapon" was found in his living area—pending resolution of a state criminal proceeding against plaintiff Joe Jackson for possession of that weapon. For the reasons set forth below, the Court recommends that defendants' motion be denied.

## FACTS

Plaintiffs' complaint alleges violations of 42 U.S.C. § 1983 while plaintiff Joe Jackson was incarcerated at Fishkill Correctional Facility. Jackson asked to be placed in protective custody to avoid problems with other prisoners. Jackson, however, refused to falsely implicate another inmate who defendant Correction Officer Johnson allegedly wanted Jackson to implicate. The complaint alleges that in retaliation, on January 9, 1996, C.O. Johnson "found" a damaged state-issued razor in Jackson's property cube, which Jackson alleges was planted either by Johnson or inmates. The complaint also alleges that Jackson was deprived of due process in connection with the resulting Tier III disciplinary hearing, which resulted in 99 days in keeplock and loss of privileges. (Cplt. § IV at attached pp. 1–2.)[1]

In addition to the internal prison disciplinary proceedings, on February 20, 1996, the Dutchess County District Attorney filed a felony complaint charging Joe Jackson with promoting prison contraband in the first degree in violation of Penal Law § 205.25(2). (10/21/97 Letter-motion by Asst. Attorney General Richard J. Cardinale, at 1–2 & Ex. B.) The felony charge has been reduced to a misdemeanor, and Jackson's next court appearance on that charge is scheduled for January 6, 1998. (*Id.* at 2 & Ex. C.)

The Assistant Attorney General defending this action only became aware of the criminal proceeding when he deposed Mr. Jackson on

---

1. Although the time within which to file objections to the latter has not expired, the defendants—to whom the report and recommendation was adverse—have advised the Court that they do not object to the report and recommendation.

1. By Order dated June 16, 1997, Judge Kaplan held that (1) the Court will not entertain plaintiffs' as yet formally unasserted claims regarding Jackson's alleged treatment at Auburn (to which he was transferred after Fishkill), without preju-

dice to his assertion thereof in the Northern District of New York; and (2) plaintiffs' claims regarding Jackson's alleged treatment at Attica (to which he was transferred after Auburn) were severed and transferred to the Western District of New York. *Jackson v. Johnson,* 97 Civ. 1592, 1997 WL 397626 at *1 (S.D.N.Y. June 16, 1997); *see also Jackson v. Johnson,* 962 F.Supp. 391, 392 (S.D.N.Y.1997).

October 10, 1997. (*Id.* at 1.) By letter-motion dated October 21, 1997, defendants moved to stay this action until resolution of the pending criminal proceeding. Because the request was made just two weeks before the November 3, 1997 discovery cutoff date, the Court ordered the parties to complete discovery while the motion was pending. (10/22/97 Order.)

Plaintiff Joe Jackson opposes the requested stay. (*See* 10/23/97 Joe Jackson letter and 10/29/97 Jackson "Opposition to Stay.") He notes that the criminal case is still pending almost two years after the January 1996 incident, and that "delayed justice is denied justice." (*Id.*) [2]

### ANALYSIS

■ It is well settled that a federal court has the discretion to stay a civil case pending resolution of a related state court criminal action, if the interests of justice so require. *See, e.g., Deakins v. Monaghan,* 484 U.S. 193, 202, 108 S.Ct. 523, 529–30, 98 L.Ed.2d 529 (1988) (error for district court to dismiss rather than stay federal § 1983 action pending resolution of related state criminal proceedings); *Mack v. Varelas,* 835 F.2d 995, 998–1000 (2d Cir.1987) (stay of § 1983 action "prudentially warranted" where one possible outcome of state criminal action would negate essential element of § 1983 claim); *Giulini v. Blessing,* 654 F.2d 189, 193 (2d Cir. 1981) ("a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the [civil] action before it pending a decision by the state court [in a related criminal action], with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views."); *Estes–El v. Long Island Jewish Med. Ctr.,* 916 F.Supp. 268, 269–70 (S.D.N.Y. 1995) (Kaplan, D.J. & Peck, M.J.) (staying a § 1983 action until resolution of a parallel state criminal action); *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.,* 886 F.Supp. 1134, 1138 (S.D.N.Y.1995) ("It is well-settled that a court has the discretionary authority to stay a case if the interests of justice so require."); *Volmar Distribs., Inc. v. New York Post Co.,* 152 F.R.D. 36, 39, 42 (S.D.N.Y.1993) (staying civil discovery until resolution of parallel state criminal proceedings, to "avoid duplication of effort and unnecessary litigation costs" and because "the outcome of the criminal case may encourage settlement" of the federal civil action).

■ "A stay of the civil case, however, is an extraordinary remedy." *Trustees v. Transworld Mechanical,* 886 F.Supp. at 1139 (citing *In re Par Pharm., Inc.,* 133 F.R.D. 12, 13 (S.D.N.Y.1990)). This Court previously has summarized the factors to consider in deciding whether to grant a stay, as follows:

"When deciding whether to grant a stay, courts consider five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."

*Estes–El v. Long Island Jewish Med. Ctr.,* 916 F.Supp. at 270 (quoting *Volmar Distribs., Inc. v. New York Post Co.,* 152 F.R.D. at 39); *see also, e.g., Trustees v. Transworld Mechanical,* 886 F.Supp. at 1139. "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distribs., Inc. v. New York Post Co.,* 152 F.R.D. at 39.

It is undisputed that this action and the state criminal proceeding arise from C.O. Johnson's discovery of a make-shift weapon in plaintiff Joe Jackson's "cube" on January 9, 1996. Nevertheless, this case does not raise the concerns contemplated by courts that have granted stays.

■ A stay is most appropriate "where a party under criminal indictment is required to defend a civil proceeding involving the same matter." *Volmar Distribs., Inc. v. New York Post Co.,* 152 F.R.D. at 39. In such a case, denying a stay might impair the crimi-

---

**2.** To the extent Jackson's opposition asks this Court to stay the criminal proceeding, that request is denied as unwarranted.

nal defendant's Fifth Amendment privilege against self-incrimination. *See, e.g., Trustees v. Transworld Mechanical,* 886 F.Supp. at 1138, 1140–41; *Volmar Distribs., Inc. v. New York Post Co.,* 152 F.R.D. at 39 (citing *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1376 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)).[3] Refusing to stay the civil action may also extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the criminal defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case. *See, e.g., SEC v. Dresser Indus., Inc.,* 628 F.2d at 1376; *Estes–El v. Long Island Jewish Med. Ctr.,* 916 F.Supp. at 270; *Trustees v. Transworld Mechanical,* 886 F.Supp. at 1138; *Volmar Distribs., Inc. v. New York Post Co.,* 152 F.R.D. at 39.

■ In the present case, the party facing criminal prosecution is Joe Jackson. Thus, any Fifth Amendment considerations concern only Mr. Jackson, who has clearly indicated his opposition to staying the civil action. The only adverse effect posited by defendants from denial of a stay is that plaintiffs may withhold discovery on the grounds that the information could be used against Joe Jackson in the criminal proceeding. (*See* 10/21/97 Cardinale Letter at 2.) That argument is moot, however, because both parties have completed discovery, and Jackson did not withhold any civil discovery. Similarly, because the stay motion was brought on the eve of the discovery cutoff and discovery is now closed, there is no concern that Jackson will use civil discovery here to obtain an advantage in the criminal proceeding.

In balancing the various interests at stake, the Court finds that a stay is inappropriate. There will be no adverse effect if the Court denies the stay, for the reasons discussed above. In contrast, plaintiffs have a legitimate interest in the expeditious resolution of this civil action. The Court notes that the criminal proceeding is now almost two years old, and there is no assurance that the criminal action will be completed at the January 6, 1998 hearing. In contrast, both Judge Kaplan and I tend to run "rocket dockets." Defendants' summary judgment motion is pending and will be decided in January 1998, after plaintiffs submit responsive papers. The summary judgment motion may well end this action, but if not, the Court is prepared promptly to try it. Accordingly, judicial efficiency would not be achieved by a stay of this action.[4] *See, e.g., IBM Corp. v. Brown,* 857 F.Supp. 1384, 1392 (C.D.Cal.1994) ("A stay would disrupt the court's calendar by indefinitely postponing trial as the defendants' criminal proceedings wend their way through the state criminal justice system."); *United States v. Banco Cafetero Int'l,* 107 F.R.D. 361, 366 (S.D.N.Y.1985) (denying stay of civil case where the criminal investigation had been going on for twenty months and no information had been submitted to show its present status or how long its resolution might take), *aff'd,* 797 F.2d 1154 (2d Cir. 1986); *Clark v. Lutcher,* 77 F.R.D. 415, 418 (M.D.Pa.1977) (stay denied where no indication that criminal trial would be held in foreseeable future; "As time progresses, evidence becomes stale, memories dim, and the search for truth, always a difficult task, becomes more and more burdensome."). Weighing all the criteria here, a stay is not justified.

### CONCLUSION

For the reasons set forth above, I recommend that the Court deny defendants' motion to stay this action.

---

3. Even where simultaneous civil and criminal proceedings might require the civil defendant to invoke his Fifth Amendment privilege, the courts have the discretion to refuse to stay the civil proceeding. *See, e.g., United States v. District Council of the United Brotherhood of Carpenters,* 782 F.Supp. 920, 925 (S.D.N.Y.1992) ("Defendants are not entitled to stay of discovery based on the contention that the government is trying to force them to invoke their fifth amendment privileges."); *SEC v. Grossman,* 121 F.R.D. 207, 210 (S.D.N.Y.1987) (denying stay of civil proceedings even though defendants contended that they would be "forced to take the Fifth Amend-

ment during the course of the civil proceedings so as to protect their right against self-incrimination in the subsequent criminal proceedings, and that as a result a negative inference can be drawn against them in the civil proceedings").

4. Of course, if a decision in the criminal action is rendered at the next scheduled conference date in early January, defendants will be able promptly to bring that to the Court's attention, thus enhancing judicial efficiency, without the need for a stay.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Dec. 2, 1997.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

■ Plaintiff Joe Jackson has moved to add the New York State Department of Correctional Services ("DOCS") and the State of New York as parties defendant in this § 1983 action. The state has opposed on the basis of its Eleventh Amendment sovereign immunity from suit.

■ The law is clear that the state, and state agencies such as DOCS, are immune from prisoner § 1983 suits because of their Eleventh Amendment sovereign immunity; in addition, neither a state nor a state agency is a "person" within the meaning of § 1983. *See, e.g., Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 97–103, 104 S.Ct. 900, 906–09, 79 L.Ed.2d 67 (1984); *Mancuso v. New York State Thruway Auth.,* 86 F.3d 289, 292 (2d Cir.1996); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir.1993); *Santiago v. New York State Dep't of Correctional Services,* 945 F.2d 25, 26, 27–28 & n. 1, 31–32 (2d Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992); *Greenwood v. State of New York,* 939 F.Supp. 1060, 1064–65 (S.D.N.Y.1996); *Gillum v. New York State Dep't of Corrections,* 91 Civ. 3020, 1993 WL 158397 at *1, 3 (S.D.N.Y. May 10, 1993). "Futility" is a basis to deny amendment. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Accordingly, I recommend that the Court deny Jackson's application for leave to amend to assert claims against New York and DOCS.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714

F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Nov. 18, 1997.